Matter of the Judicial Settlement of the Account of FRED. J.
LANCASTER and Another, as Executors, etc., of ANNA E. TUCKER,
Deceased.

(Surrogate's Court, New York County, July, 1899.)

1. **Trustees, testamentary — Not subject to ex parte orders procured by
general guardian of infants.**

Testamentary trustees, directed to apply the income of a residuary
estate to the use of granddaughters of the testatrix (now infants)
during their lives, are neither bound nor protected by *ex parte* orders
of the Supreme Court, procured by their mother, their general guar-
dian by appointment of that court, making her certain monthly al-
lowances for their board and care.

2. **Same — Direct payment to general guardian.**

The trustees may pay the income directly to the mother, and the
fact that she has given no bond under section 2746 of the Code of
Civil Procedure is immaterial, as the section has no application to
her status.

3. **Same — Discretion as to amount thereof.**

Where testamentary trustees have discretion in determining what
amounts they will allow infant beneficiaries for their support, the
court will not interfere except in a proven case of abuse.

JUDICIAL settlement of the accounts of executors.

Louis O. Van Doren, for executors, etc.

Theodore H. Silkman and Alfred P. W. Seaman, special guar-
dians, opposed.

VARNUM, S.  This is one of the undecided matters that was
before Surrogate Arnold.  Decedent directed her executors and
trustees to apply the income arising from her residuary estate to
the use of three granddaughters during their lives.  At the time of
decedent's death, in 1888, these beneficiaries were nine, eleven and
thirteen years of age, respectively.  They lived with their mother,
who was appointed their general guardian by the Supreme Court.

It appears that during the period covered by the accounting, from September, 1888, to March, 1891, the trustees paid to the general guardian from the income in their hands nearly $7,300 for the use of each infant. The annual income applicable to each child under the provision above noted was about $3,800. One of the infants was given an additional interest in the estate, so that its annual income amounted to $5,000, and all three of these beneficiaries are yet to share equally in their father's estate, which is quite large. In May, 1889, the general guardian obtained an *ex parte* order in the Supreme Court allowing her $20 a week for the board and care of each of said infants, in addition to payments for clothes, schooling, etc. Another *ex parte* order made additional annual allowances for each child. While these orders did not contain any direction to the trustees to pay these amounts, yet their provisions were carried out to the letter. During the period of eight months preceding the entry of the first order the executors likewise allowed the general guardian $20 weekly for the board and care of each child. The main objection to the account was raised by the special guardian of these infants, and called into question the propriety of the payments thus made by the trustees. On the first hearing the referee found that $50 per month was all that should be allowed for the care of an infant situated as these beneficiaries were. This finding appears to be merely an opinion of the referee, as no testimony on the question was taken. The referee further held, however, that the Supreme Court orders were conclusive, and that the payments made thereunder could not be attacked. Hence, he held that the accounts should be surcharged with the amounts paid the general guardian for the care of her children in excess of $50 per month, but only for the period prior to the making of the first Supreme Court order. The order which decreed a rehearing of the issues directed the referee to take proper and competent testimony on the question of what was a reasonable charge for the support and maintenance of these infants. During the hearing thereafter had the special guardian attempted to carry out this direction, but the testimony that he produced was utterly without value and must be entirely discarded. As a result, the referee, in his second report, repeated his original finding on this subject. It should be said at the outset that I cannot agree in the conclusion that the Supreme Court orders bound the executors or afforded them any protection. I fail to see how *ex parte* applications of this kind can in anywise control the conduct of persons

Misc.] Surrogate's Court, New York County, July, 1899.

not parties thereto. If, for example, the trustees had refused to make the payments that were allowed, assuredly they could not have been punished for a contempt. If the accountants were justified in applying the sums that were used for the maintenance of these children, their action must find support in a source other than the orders which apparently were entirely relied upon. The general guardian faithfully recorded the expenditures made by her, and the special guardian does not, it seems, contend that any of them were excessive, excepting only the allowance of about $86 per month for the care of each infant. It was not necessarily improper for the trustees to make the payments in question to the mother and general guardian, instead of directly applying the money themselves (Perry on Trusts, § 620), and I fail to see the force of the contention made by the special guardian that this course was unlawful because the general guardian has not given any bond under section 2746 of the Code of Civil Procedure. That section merely covers a case where a legacy or distributive share is payable to an infant, and has no bearing on the conduct of a trustee to apply income. In many cases, and especially where the general guardian is the parent of the infant, it is manifestly proper for a trustee to furnish the guardian with sufficient funds to conduct a household suitable to the style of living which the income justifies. It is true that the guardian herein, by reason of the new household carried on by her, lives on a much larger scale and enjoys many more luxuries than she was accustomed to before her children were the possessors of the life incomes which the bounty of the decedent provided for them. But it does not follow that parents of moderate circumstances whose children, by some good fortune, are made financially independent, as in the present case, should be compelled to breathe in a different atmosphere from their children or to break bread at a different table. On the contrary, the more liberal household surroundings which the changed condition of things would properly permit, should undoubtedly be enjoyed by the parents. Otherwise, indeed, the testator's goodness would prove a grave misfortune; it would, in all probability, mean the breaking asunder of family ties, the loss of parental authority, the death of filial love. It seems to me that the special guardian's contention in this regard is unfounded and should not be permitted to prevail. The decedent in no way limited the trustees in the manner in which they should dispose of the incomes for the use of the children, or what proportion should

be devoted to their actual support. A broad discretion is vested in the accountants, and the court will not interfere with its exercise unless it is apparent that it is being abused. Ireland v. Ireland, 84 N. Y. 321. Certainly, the juxtaposition of the figures representing the incomes of these infants, with the allowances made for their care and support, does not shock the conscience of the court. The household that was carried on by the general guardian, and properly participated in by her, was not, in my opinion, an extravagant one in the light of the property possessed by these beneficiaries. Where it is claimed that a trust of this kind is being improperly exercised, and that the trustees are not acting in good faith, it seems to me that some tangible evidence should be produced in support of such a claim before the court should punish the trustees by surcharging their account. A mere allegation that the trustee is abusing the discretion vested in him does not throw any burden on him to show that he is unjustly accused. The special guardian has entirely failed to show any bad faith or that the reasonable cost of supporting the infants herein is less than the amounts paid out by the trustees. Again, no evidence was produced as to what the character of a household should be for infants situated as these were, and what the reasonable contribution of each infant should be toward sustaining such a household. As the matter stands, and from the facts here present, my judgment is that the amounts expended for the children were not excessive. The exceptions to the referee's report, in so far as it holds that the account should be surcharged by reason of these payments, are sustained. The contention of the executors that the share of the posthumous child of Edward C. Tucker is not dependent upon the provisions of the will is also sustained, and the report should be corrected accordingly. The other findings made by the referee are supported by the evidence; the exceptions thereto are overruled, and the report will be confirmed in all respects except as aforesaid. The question of commissions will be taken up and determined at the time of the settlement of the decree.

Decreed accordingly.